```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

```
Jennifer Dennis,                    )
                                    )
          Plaintiff,                )
                                    )
                                    )
     v.                             )  No. 19-cv-5427
                                    )
                                    )
Greatland Home Health Services,     )
Inc. and Monsuru Hassan,            )
                                    )
          Defendants.               )
```

Memorandum Opinion and Order

Plaintiff Jennifer Dennis worked as a Registered Nurse ("RN") performing in-home patient visits for Defendant Greatland Home Health Services, Inc. ("Greatland") from December 2018 until July 2019. ECF No. 1 ¶ 8; ECF No. 122 at 2. Like all of Greatland's clinicians at that time--including RNs, physical therapists, and occupational therapists--Ms. Dennis's position was compensated on a hybrid basis; that is, she was predominately paid a flat fee per home visit, but she was also eligible for hourly compensation for certain non-patient time, such as orientation, periodic in-service training, and paid time off. See ECF No. 122 at 2-3. Ms. Dennis contends that Greatland clinicians such as herself often worked in excess of 40 hours per week--particularly because they sometimes performed work such as charting, communicating with physicians,

travelling, and scheduling outside of the time they spent in patients' homes--but Greatland did not pay clinicians overtime wages. *See* ECF No. 111 at 5-7. To challenge this exclusion of overtime pay, Ms. Dennis brings a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which I conditionally certified in February 2020. ECF No. 30. She also asserts a Rule 23 class action under the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*

Separately, Ms. Dennis asserts that in 2019, Greatland failed to reimburse clinicians for personal vehicle travel and cell phone expenses incurred within the scope of their employment. Ms. Dennis brings a Rule 23 class action under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*, for reimbursement of those expenses.

Ms. Dennis now seeks certification of her IMWL and IWPCA class actions under Federal Rule of Civil Procedure 23. ECF No. 111. Defendants oppose certification and separately move to decertify the FLSA collective action. ECF Nos. 121, 122. For the reasons that follow, the motion for Rule 23 certification [111] is granted, and the motion to decertify the collective FLSA action [121] is denied.

2

I.

I turn first to the question of class certification. Ms. Dennis seeks certification under Federal Rule of Civil Procedure 23(b)(3),[1] proposing the following class and subclasses:

> All individuals employed by Greatland Home Health Services, Inc. as home health Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Therapists who
>
> (1) worked full-time and were paid on a "per visit" basis during a period from August 13, 2016 to the date of judgment in this action ("IMWL Unpaid Overtime Subclass");
>
> (2) used their personal vehicles to travel between patient visits during the period from January 1, 2019 to January 1, 2020 ("IWPCA Vehicle Use Subclass"); and/or
>
> (3) used their personal cell phones for business communications during the period from January 1, 2019 to January 1, 2020 ("IWPCA Cell Phone Use Subclass").

ECF No. 111 at 8.

---

[1] In the alternative, she seeks certification under Rule 23(c)(4). Because I grant her motion to certify under Rule 23(b)(3), however, I need not consider this alternative.

3

"Federal Rule 23(a) ensures that a class format is an appropriate procedure for adjudicating a particular claim by requiring that the class meet the following requirements: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (citing Fed. R. Civ. P. 23(a)). Once the four requirements of Rule 23(a) are met, a class must also satisfy Rule 23(b). *Id.* Ms. Dennis seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.

I first consider the question of numerosity, the first of the Rule 23(a) factors. There is no "magic number" of plaintiffs that make a class so numerous that joinder is impracticable, but "a forty-member class is often regarded as sufficient." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).

4

"[A] plaintiff does not need to determine the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Sanchez v. Roka Akor Chi. LLC*, No. 14-cv-4645, 2016 WL 74668, at *3 (N.D. Ill. Jan. 7, 2016) (citation omitted).

Ms. Dennis argues that both her IMWL and IWPCA classes include over forty members. She points out that Greatland employs between 50 and 100 clinicians at any given time, which necessitates that more than that number are implicated over the course of the class periods. *See* ECF No. 111 at 5, 12. Further, after her FLSA class was conditionally certified, Ms. Dennis obtained data from Greatland's electronic medical record software program, Homecare Homebase, from the period May 2018 through May 2020. ECF No. 124 at 3; ECF No. 122 at 4. Those data showed that approximately 250 clinicians had been employed by Greatland during that two-year period, and 127 had been employed in 2019 (the year relevant to the IWPCA subclasses). ECF No. 111 at 12; ECF No. 111-11. Accordingly, Ms. Dennis argues, the IWPCA subclasses are likely composed of approximately 127 members, and the IMWL unpaid overtime subclass may be even larger. ECF No. 111 at 12.

Defendants do not challenge the numerosity of the IWPCA subclasses, *see* ECF No. 122 at 20-21; ECF No. 124 at 3 n.3, but they do argue that the IMWL unpaid overtime subclass is insufficiently numerous because many clinicians did not work overtime, and are therefore ineligible for recovery, ECF No. 122

5

at 20. In particular, Defendants point to the Homecare Homebase data cited by Ms. Dennis. Homecare Homebase tracks and records the time clinicians arrive at and leave patients' homes, the GPS coordinates of the visit, and the duration of time each patient's chart is accessed in the system for editing or review. *See* ECF No. 111 at 6. Homecare Homebase is not an employee timekeeping system, however, and does not track all hours clinicians work--it does not record, for example, meeting attendance or time clinicians spend scheduling or coordinating with doctors. *Id.* However, Greatland does use Homecare Homebase to track "productivity points" which are assigned based on the number of weekly visits; 25-30 points per week is considered full-time status. *Id.* at 5; ECF No. 122 at 3. Analyzing the data from Homecare Homebase, Ms. Dennis asserts that at least 68 clinicians worked overtime-- defined as earning over 25 productivity points--between May 2018 and May 2020. ECF No. 122 at 17; ECF No. 124 at 3-4. Ms. Dennis argues that means the class is numerous--68, after all, is more than the 40 members that are generally deemed sufficient, *see Mulvania*, 850 F.3d at 859. But Defendants argue that 68 clinicians is only 36% of clinicians employed during that time period-- suggesting that the majority of the overtime class is uninjured. ECF No. 122 at 17.

"Plaintiffs need not prove that every member of the proposed class has been harmed before the class can be certified. . . . A

class will often include persons who have not been injured by the defendant's conduct, but this possibility, or indeed inevitability, does not preclude class certification." *Bell*, 800 F.3d at 380 (citing *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)). Requiring the plaintiff to identify which class members have been injured before certification would be "putting the cart before the horse" and would "vitiate the economies of class action procedure; in effect the trial would precede the certification." *Kohen*, 571 F.3d at 677. "If very few members of the class were harmed, that is 'an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate' [the defendant]." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) (citing *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013)).

However, if "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's unlawful conduct, the class is defined too broadly to permit certification." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) (citing *Kohen*, 571 F.3d at 677). The important language there, though, is "could not have been harmed," as distinct from class members who were not harmed. *See id.*; *Bell*, 800 F.3d at 380. Here, Greatland uniformly denied all clinicians overtime pay. *See* ECF No. 111 at 5.

7

Accordingly, each clinician could have been harmed if the clinician had worked more than 40 hours in a week. *See Bell*, 800 F.3d at 380 (affirming certification of class of bank workers who claimed they had been subjected to unofficial policy of denying overtime compensation despite arguments that questions of individualized relief precluded certification, and distinguishing those who could not have been harmed by the policy--"managerial employees who are exempt from overtime hour laws"--from class member "employees who could have been harmed by the policy but were, in fact, not harmed"). Because each of the members of the overtime subclass *could* have been harmed here, the class definition does not sweep so broadly as to preclude certification.

Moreover, the percentage of uninjured plaintiffs is likely not as high as Defendants claim. The Homecare Homebase data was collected for purposes of the FLSA claim, and it is not tailored to the IMWL subclass. For example, the Homecare Homebase data included part-time clinicians, who are specifically excluded from the IMWL subclass and who, almost by definition, would not have worked overtime. It is also worth noting that no data was produced for clinicians who were employed during the nearly two-year period at the beginning of the IMWL class period, which began in August 2016. So it is likely that the number of clinicians who worked

8

overtime is higher than the 68 claimed by Ms. Dennis,[2] and the percentage of full-time clinicians who worked overtime is higher than Defendants' asserted 36%. Because I find that a substantial number of clinicians are likely included in the IMWL subclass, I conclude that Ms. Dennis has satisfied the numerosity requirement.

B.

Ms. Dennis must also meet Rule 23(a)(2)'s requirement that there exist questions of law or fact common to the class. The commonality requirement may be satisfied by even a single common question. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The common question, however, "must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, the common question central to the validity of each class member's claim is whether Greatland's pay plan was lawful.

---

[2] Defendants also take issue with the fact that Ms. Dennis's calculations are premised on a definition of "overtime" that includes anything above 25 productivity points, when the record testimony was that the range of 25-30 productivity points was considered full-time. *See* ECF No. 111 at 5; ECF No. 122 at 3. But I am not convinced that Ms. Dennis's selection of the low end versus the high end of the full-time spectrum was unreasonable. And at any rate, particularly given the limitations of the Homecare Homebase data, there is no reason to believe that a class of clinicians who earned more than 30 productivity points would be insufficiently numerous.

9

With respect to the IMWL unpaid overtime subclass, the relevant question is whether Greatland was obligated to pay its clinicians overtime wages under Illinois law. With respect to the IWPCA subclasses, it is whether clinicians were entitled to be reimbursed for personal cell phone and travel expenses in 2019. If the answer to those question is no, plaintiffs have no claim. If the answer is yes, the only remaining issues concern the quantity of damages. These common issues satisfy the commonality requirement. *See, e.g.*, *Lukas v. Advocate Health Care Network & Subsidiaries*, No. 1:14-cv-2740, 2015 WL 5006019, at *5 (N.D. Ill. Aug. 19, 2015) (concluding, in a case with striking factual similarities involving home healthcare clinicians and overtime compensation, that commonality was satisfied by "the question of whether a mixed per-visit and per-hour pay arrangement allows [Defendant] to lawfully classify Clinicians as exempt under the FLSA").

Defendants argue that individualized questions undermine commonality here--for example, they claim that IWPCA putative class members did not submit expense reimbursement requests within 30 days after their expenses were incurred, so Greatland is excused from reimbursing those clinicians under Illinois law. *See* ECF No. 122 at 22 (citing 820 Ill. Comp. Stat. 115/9.5(a)). But the existence of these individualized issues does not undermine the overriding common questions regarding the legality of Greatland's uniform pay plan. As noted above, one common question is enough.

And at any rate, whether clinicians are barred from seeking expense reimbursement after 30 days may be a question common to multiple class members such that it is efficiently resolved in a class-action format. I conclude that commonality is satisfied.

### C.

I next consider the question of typicality. "A 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory.'" *Lacy v. Cook Cnty.*, 897 F.3d 847, 866 (7th Cir. 2018) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Typical does not mean identical, and the typicality requirement is liberally construed." *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 WL 642092, at *7 (N.D. Ill. Feb. 19, 2014) (citing *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996)).

Ms. Dennis, the named plaintiff here, worked as an RN for Greatland between December 2018 and July 2019. ECF No. 1 ¶ 8; ECF No. 122 at 2. She was subject to Greatland's uniform policies regarding overtime compensation and expense reimbursement that are central to this lawsuit. *See* ECF No. 9 ¶¶ 13, 24, 30. Because Ms. Dennis's claim is premised on the same legal theories and arises from the same practice and course of conduct as the claims of the putative class members, her claim is typical.

Defendants point to certain allegedly unique features of Ms. Dennis's work and compensation. They point out, for example, that Ms. Dennis never received hourly pay after her orientation; did not work for Greatland in or after 2020, when it changed its compensation scheme to remove most instances of hourly pay; and did not formally submit any reimbursement claims within 30 days of incurring her expenses.[3] ECF No. 122 at 23. But none of these differences makes Ms. Dennis's claim unlike those of her class members; "[l]isting trivial differences between the facts underlying a named plaintiff's claims and those underlying the claims of other class members does not render the named plaintiff atypical for purposes of Rule 23." *Lukas*, 2015 WL 5006019, at *4 (citing *Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014)). Because Ms. Dennis was subject to the uniform pay policies central to this litigation, I conclude that her claim is typical.

---

[3] It is worth noting that according to Ms. Dennis, some of these differences arose as a direct result of Greatland's interference. Ms. Dennis testified, for example, that Greatland refused to pay hourly wages she was owed after post-orientation training, ECF No. 122-3 at 87:20-88:20, and that although she never submitted a claim reimbursement form, she inquired multiple times with Defendant Hassan (Greatland's owner and operator) about how to request reimbursement and was never given an answer, *id.* at 30:5-32:16, 59:14-60:10.

D.

I next consider adequacy of representation, the final Rule 23(a) requirement. "The adequacy criterion requires that the claims and interests of the named plaintiff not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel are experienced and competent." *Id.* at *5 (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)). There is no evidence here that Ms. Dennis's claims conflict with those of the class or that class representatives have insufficient interest in the case's outcome. Moreover, Ms. Dennis's attorneys--of Stephan Zouras, LLP--have experience litigating similar wage and hour cases and have been found adequate by other courts. *See, e.g., id.* I have no trouble concluding that the adequacy requirement is met here.

E.

Having determined that the Rule 23(a) criteria have been satisfied, I turn now to Rule 23(b)(3). To meet the requirements of that subsection, Ms. Dennis must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

13

The predominance question overlaps somewhat with commonality and typicality, but it is a more demanding standard. *Messner*, 669 F.3d at 814. It "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication'"; in other words, when "a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Id.* at 815 (citations omitted). As noted above, there are significant common questions at play in this case that can be resolved for all members, including whether Greatland was obligated to pay its clinicians overtime wages or reimburse them for travel and cell phone expenses under Illinois law.

Defendants argue that these questions do not predominate over member-specific damages questions. But "individualized damages determinations do not defeat predominance for class certification purposes." *Lukas*, 2015 WL 5006019, at *7; *see also Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages . . . .'"). Moreover, even if

14

individualized damages determinations are ultimately required, the process will likely not be as unmanageable as Defendants suggest. Under both the FLSA and the IMWL, employers are required to keep accurate records of non-exempt employees' work hours. *See Lukas*, 2015 WL 5006019, at *7 (citing 29 U.S.C. § 211(c) and 820 Ill. Comp. Stat. 105/8). Here, Defendants did not do so. Accordingly, assuming plaintiffs establish that the clinicians are not exempt, the clinicians "will enjoy a relaxed standard of proof in establishing damages," *id.*, and may be able to use Homecare Homebase data to approximate class damages, minimizing the need for individual, fact-intensive damages determinations.

Because common issues predominate here, liability is most efficiently adjudicated at once, and a class-action format is superior to individual trials for each class member. *See id.* at *8. Defendants argue that as an alternative to bringing a class action, consistent with the Seventh Circuit's suggestion in *Espenscheid v. DirectSat USA, LLC*, Ms. Dennis could have complained to "the Department of Labor, which enforces the [FLSA] and can obtain in a suit under the Act the same monetary relief for the class members that they could obtain in a class action suit." 705 F.3d 770, 776 (7th Cir. 2013). But both the IMWL and IWPCA explicitly authorize wage claims to be brought as civil actions. *See* 820 Ill. Comp. Stat. 105/12; 820 Ill. Comp. Stat. 115/14. Moreover, it is not apparent how a Department of Labor proceeding

15

would be more manageable or efficient, especially given that the instant proceeding is already underway.

Because I conclude that the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the motion to certify the class action [111] is granted.

## II.

Next, I must consider Defendants' motion to decertify the FLSA collective action. The parties here agree that the standard for certifying a collective action under the FLSA is not more stringent than the standard for certifying a class under Rule 23. *See* ECF No. 122 at 18; ECF No. 125 at 2-3. Accordingly, I may assume that because certification under Rule 23 is proper here, decertification of the FLSA action would be improper. *See Tomeo v. W&E Commc'ns, Inc.*, No. 14 C 2431, 2016 WL 8711483, at *15 (N.D. Ill. Sept. 30, 2016) (citing *Tyson*, 577 U.S. at 452); *see also Lukas*, 2015 WL 5006019, at *8 ("Because Plaintiffs' proposed class meets the Rule 23 standards for class certification, it necessarily meets the much lower bar for FLSA collective action certification. Therefore, [Defendant]'s motion to decertify the collective action is denied.").

Although unnecessary in light of the foregoing, I will note that Ms. Dennis meets the standard set by the FLSA. Courts in this district have commonly employed a two-part test to determine whether employees are "similarly situated" such that an FLSA

16

collective action may proceed. *Haugen v. Roundy's Ill., LLC*, No. 18-cv-7297, 2021 WL 3418848, at *1 (N.D. Ill. Aug. 5, 2021) (citing *Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 103-04 (N.D. Ill. 2013)). At the second stage, when (as here) the court is considering a motion for decertification after discovery, "the court considers the following factors: '(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns.'" *Id.* (citing *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) (St. Eve, J.)).

Plaintiffs generally share similar factual and employment settings where there is "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws," including "polices or practices that bind the plaintiffs' claims together." *Camilotes*, 286 F.R.D. at 346. As discussed above, plaintiffs were subject to Greatland's hybrid pay plan and uniform policy classifying clinicians as exempt from overtime pay. *See* ECF No. 9 ¶¶ 14-15, 18. These policies subjected the plaintiffs to a similar factual and employment setting. *See, e.g., Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2019 WL 354958, at *4 (N.D. Ill. Jan. 29, 2019) ("It is . . . probative that the entire [FLSA] subclass was categorically

17

classified as exempt from overtime pay . . . . That policy suggests that the company itself viewed the [subclass plaintiffs] as similarly situated for purposes of overtime pay."). Moreover, because the central questions of liability hinge on Greatland's policies, Defendants' defenses will likely apply to collective members in the same manner. And because Defendants' liability and defenses are subject to collective resolution, it is preferable as a matter of fairness and judicial economy to proceed collectively, rather than on the basis of individual lawsuits.

For the foregoing reasons, the motion to decertify the FLSA collective action [121] is denied.

ENTER ORDER:

*Elaine E. Bucklo* (signature)

**Elaine E. Bucklo**
United States District Judge

Dated: March 14, 2022