**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER DENNIS, on behalf of herself,** | ) | |
| **individually, and on behalf of all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:19-cv-05427** |
| | ) | |
| **v.** | ) | **Hon. Elaine E. Bucklo** |
| | ) | |
| **GREATLAND HOME HEALTH SERVICES,** | ) | **Magistrate Judge Maria Valdez** |
| **INC., and MONSURU HASSAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**JOINT MOTION FOR FINAL APPROVAL OF**
**CLASS AND COLLECTIVE ACTION SETTLEMENT**

| **CLASS COUNSEL:** | **ATTORNEYS FOR DEFENDANTS:** |
|---|---|
| James B. Zouras | Jeffrey S. Fowler |
| Teresa M. Becvar | David A. Moore |
| STEPHAN ZOURAS, LLP | LANER MUCHIN, LTD. |
| 222 West Adams Street | 515 N. State Street |
| Suite 2020 | Suite 2800 |
| Chicago, Illinois 60606 | Chicago, Illinois 60654 |
| (312) 233-1550 | (312) 467-9800 |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND.....................................................2

II.    SUMMARY OF THE SETTLEMENT TERMS .........................................................5

     A.     The Settlement Amount .................................................................................5

     B.     Eligible Class Members .................................................................................5

     C.     Release ...........................................................................................................5

     D.     Allocation Formula .......................................................................................6

     E.     Service Payment, Attorneys' Fees, and Settlement Administration
          Expenses .......................................................................................................6

     F.     Settlement Administration .............................................................................7

     G.     Objections and Opt-Outs...............................................................................7

III.    THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF
      RULE 23 .......................................................................................................................8

IV.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED
      BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION
      OF A BONA FIDE DISPUTE OVER PLAINTIFFS' CLAIMS .......................................8

     A.     The Class Is Adequately Represented by the Class Representative
          and Class Counsel (First Factor)..............................................................10

     B.     The Settlement Was Negotiated Fairly (Second Factor) ......................................11

     C.     The Settlement Amount Adequately Provides Relief
          to the Class (Third Factor). ........................................................................11

          1.     The Settlement Amount Is Substantial Given the Strengths of
               Plaintiffs' Claims and Attendant Risks.....................................................12

          2.     Litigation Through Trial and Appeals Would Be Complex, Costly,
               and Long ....................................................................................................14

3.      There Has Been No Opposition to the Settlement, and Competent
        Counsel for All Parties Endorse the Agreement ......................................15

4.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve
        the Case Responsibly ................................................................................16

D.      Class Members Were Treated Equitably Relative to
        Each Other (Fourth Factor)........................................................................16

CONCLUSION..............................................................................................................17

# **TABLE OF AUTHORITIES**

**Cases**                     **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)................................................ 8

*Armstrong v. Board of School Directors*,
616 F.2d 305 (7th Cir. 1975) ............................................................................................. 10

*Butler v. Am. Cable & Tel., LLC*,
No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011).......................................... 10

*West Virginia v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970) ..................................................................................... 14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996) ........................................................................................... 11

*Curtiss-Wright Corp. v. Helfand*,
687 F.2d 171 (7th Cir. 1982) ............................................................................................. 16

*Donovan v. Estate of Fitzsimmons*,
778 F.2d 298 (7th Cir. 1985) ............................................................................................. 15

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ......................................................................................... 9, 12

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).............................................................................................................. 8

*Elwell v. Univ. Hosps. Home Care Servs.*,
276 F.3d 832 (6th Cir. 2002) ............................................................................................. 13

*Equity Funding Corp. of America Sec. Litig.*,
603 F.2d 1353 (9th Cir. 1979) ........................................................................................... 17

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ............................................................................................... 9

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ............................................................................................... 8

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ............................................................................................. 10

*Hicks v. Great Lakes Home Health Servs.*,
    No. 17-CV-12674, 2018 WL 2363959 (E.D. Mich. May 24, 2018) ...................................... 13

*Hispanics United of DuPage County v. Village of Addison, Illinois*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................................................... 15

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 179 (2d Cir. 1987) ................................................................................................ 16

*In re Aon Corp. Wage & Hour Employment Practices Litig.*,
    No. 08 Civ. 5802, 2011 WL 248448 (N.D. Ill. Jan. 26, 2011) ............................................. 13

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................... 11, 17

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...................................................................................... passim

*Lukas v. Advocate Health Care Network and Subsidiaries*,
    No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) .......................................... 10

*Mirfasihi v. Fleet Mortgage Corp.*,
    356 F.3d 781 (7th Cir. 2004) ................................................................................................. 9

*Patterson v. Stovall*,
    528 F.2d 108 (7th Cir. 1976) ................................................................................................. 8

*Resurrection v. Shannon*,
    2013 IL App (1st) 111605.................................................................................................... 2

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .............................................................................................. 15

*Rindfleisch v. Gentiva Health Servs., Inc.*,
    962 F. Supp. 2d 1310 (N.D. Ga. 2013) ............................................................................... 13

*Seiden v. Nicholson*,
    72 F.R.D. 201 (N.D. Ill. 1976)............................................................................................ 15

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ........................................ 9, 11

*Urnikis-Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) .............................................................................................. 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................ 9

*Williams v. Quinn*,
    748 F. Supp. 2d 892 (N.D. Ill. 2010) ............................................................... 12

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................... 11

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ............................................... 1

Illinois Minimum Wage Law, 820 ILCS § 105, *et seq* ........................................... 1

Illinois Wage Payment and Collection Act, 820 ILCS § 115/1, *et seq* ................... 1, 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 8, 9

**Treatises**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions, (4th ed. 2002) ........................ 11

v

## INTRODUCTION

Named Plaintiff and Class Representative Jennifer Dennis ("Named Plaintiff"), individually and on behalf of a collective of 11 Opt-In Plaintiffs and a certified Illinois class of 196 other home health Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Therapists (collectively, "Clinicians" or "Plaintiffs"), and Defendants Greatland Home Health Services, Inc. and Monsuru Hassan ("Defendants") (together with Plaintiffs, the "Parties"), by and through their undersigned counsel, jointly move for final approval of the Parties' settlement of Plaintiffs' claims that Defendants misclassified them as exempt from overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105, *et seq.*, and failed to reimburse their expenses incurred within the scope of employment under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq*. The Parties' settlement of this hybrid FLSA collective action and state-law Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval.

The Parties respectfully request the Court: (1) grant final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A, including the releases of claims as set forth therein; and (2) enter the Proposed Final Approval Order and Final Judgment, attached as Exhibit B. On November 10, 2022, the Court took the first step in the settlement approval process by preliminarily approving the Parties' class and collective action settlement; appointing CPT Group Inc. ("Settlement Administrator") as Settlement Administrator; authorizing the Settlement Administrator to mail notice to class members; and setting a date for the Final Approval Hearing. (ECF No. 148.)

Class members have been notified of the terms of the settlement, including the monetary

relief, the allocation formula, and their right to participate in, object to, or opt out of settlement. Ex. C, Declaration of Veronica Olivares With Respect to Notification and Settlement Administration ("Admin. Decl.") ¶¶ 4, 6-10; *see also* Ex. A to Admin. Decl. (Settlement Notice). To date, no Class Members have opted out of the settlement, and no Class Members have objected to the settlement. Ex. C, Admin. Decl. ¶¶ 11-12; Ex. D, Declaration of Teresa M. Becvar ("Becvar Decl.") ¶ 8. With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement ("Preliminary Approval Motion") (ECF No. 145), Named Plaintiff Jennifer Dennis filed the above-captioned class and collective action on August 13, 2019, alleging that Defendants knowingly misclassified her and other Clinicians as exempt from overtime pay because Defendants' pay scheme, which compensated all Clinicians on a combined hourly basis for some work and "per visit" basis for other work, failed to meet the salary or fee basis tests under the FLSA and IMWL and therefore failed to satisfy the requirements of the professional employee exemption. (ECF No. 1.)[1] Named Plaintiff further alleges that Defendants failed to reimburse Clinicians for use of their personal vehicles to travel between patient visits and for use of their personal cell phones for business communications as required under the IWPCA. As a result, Named Plaintiff alleges that Clinicians were deprived of overtime wages and unreimbursed expenses in violation of federal and state wage law.

Named Plaintiff sought to represent herself and similarly situated Clinicians as a collective

---

[1] The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g.*, *Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

action under the FLSA and a class action under the IMWL, IWPCA, and Federal Rule of Civil Procedure 23. On February 7, 2020, the Court granted Named Plaintiff's motion for conditional certification under the FLSA, thereby authorizing notice of the action to a collective of all individuals employed by Greatland Home Health Services, Inc. as Clinicians who were paid on a "per visit" basis from three years prior to the entry of the conditional certification order to the present. (ECF No. 30.) Thereafter, 37 individuals timely filed opt-in consent forms to join the FLSA collective action ("Opt-In Plaintiffs").[2]

After a period of discovery, Named Plaintiff moved for class certification under Rule 23(b)(3) of her IMWL and IWPCA claims, and Defendants moved to decertify the FLSA collective action. (*See* ECF Nos. 111 & 121.) On March 14, 2022, the Court granted Plaintiff's motion for class certification and denied Defendants' motion to decertify the collective action. (ECF No. 128.)

The Parties have conducted extensive discovery and case analysis including: (a) the exchange of Rule 26(a) disclosures; (b) the production and review of over 58,000 pages of written discovery, including voluminous production of electronically stored information ("ESI") in the form of over 190,000 lines of data from the Homecare Homebase electronic medical record system; (c) the review of Defendants' written policies and procedures; (d) comprehensive data analysis by each party's undisclosed expert; (e) written discovery from each of the opt-in Plaintiffs; (f) a total 15 depositions; and (g) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Ex. D, Becvar Decl. ¶ 6.

The Parties agreed to engage in mediation after discovery closed, but before class certification was decided. On October 12, 2021, the Parties attended a full-day mediation overseen

---

[2] As a result of the withdrawal and dismissal of the FLSA claims of several Opt-In Plaintiffs, currently there are only 11 Opt-In Plaintiffs participating in the case.

by a private mediator, Hon. Morton Denlow (Ret.), but were not able to reach agreement. Ex. D, Becvar Decl. ¶ 7. After the Court granted class certification and denied decertification, the Parties resumed settlement discussions and agreed to a settlement in principle of all claims on a class and collective basis, which was memorialized the formal Settlement Agreement executed in full on November 1, 2022. *Id.* This settlement provides for substantial monetary relief for the Named Plaintiff, 11 Opt-In Plaintiffs, and 196 Class Members for a class period spanning over 74 months. *Id.* ¶ 9. The Class and Subclasses are defined as all individuals (inclusive of the Named Plaintiff) who were employed by Greatland Home Health Services, Inc. as home health Registered Nurses, Physical Therapists, Occupational Therapists, and Speech Therapists who:

> (1) worked full-time and were paid on a "per visit" basis during the period from August 13, 2016 to the date the Settlement Agreement is fully executed ("IMWL Unpaid Overtime Subclass");
>
> (2) used their personal vehicles to travel between patient visits during the period from January 1, 2019 to January 1, 2020 ("IWPCA Vehicle Use Subclass"); and/or
>
> (3) used their personal cell phones for business communications during the period from January 1, 2019 to January 1, 2020 ("IWPCA Cell Phone Use Subclass").

Ex. A, Settlement Agreement ¶ 14; *see also* ECF No. 128 (Memo. Op. and Order certifying the Class and Subclasses).

On November 2, 2022, the Parties moved for preliminary approval of the Settlement Agreement (ECF No. 145), which the Court granted on November 10, 2022. (ECF No. 148.) On January 4, 2023, the Parties move for approval of an amended settlement allocation plan (ECF No. 151), which the Court also granted on January 17, 2023. (ECF No. 153.)

## II.      SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendants. Ex. D, Becvar Decl. ¶ 10.

### A.      <u>The Settlement Amount</u>

The Settlement Agreement provides that Defendants will pay the gross Settlement Amount of $975,000.00. Ex. A, Settlement Agreement ¶ 28. The Settlement Amount covers: (1) all approved attorneys' fees and litigation costs in connection with Class Counsel's representation of Named Plaintiff, Opt-In Plaintiffs, and Class Members; (2) all Administrative Fees incurred by the Settlement Administrator; (3) all payments to the Opt-In Plaintiffs and Class Members; and (4) a service payment to the Named Plaintiff ("Service Payment"). *Id.* Any unclaimed funds resulting from uncashed checks will be distributed as a *cy pres* to Nurses House, Inc., a national nonprofit organization dedicated to helping registered nurses in need. *Id.* ¶ 54(g).

### B.      <u>Eligible Class Members</u>

No action is required by the members of the Settlement Class to receive a settlement payment. Ex. A, Settlement Agreement ¶ 44. Named Plaintiff, Opt-In Plaintiffs, and all Class Members will automatically receive a payment. *Id.* ¶ 57(c).

### C.      <u>Release</u>

The Settlement Agreement provides that, upon entry of an order granting final approval of the settlement by the Court, the Settlement Class, including the Named Plaintiff, Opt-In Plaintiffs, and the Class Members who have not validly and timely opted-out of the settlement will release all claims for unpaid wages, overtime, unreimbursed expenses or other compensation, fees/costs, liquidated damages, penalties, and all other relief under the IMWL, IWPCA, and all other state

5

and local wage/hour and wage payment laws and common law theories arising on or before the date of execution of the Settlement Agreement. Ex. A, Settlement Agreement ¶ 59. In addition, the Named Plaintiff, Opt-In Plaintiffs, and Class Members who timely negotiate their settlement checks will consent to join the collective action, if they have not done so already, and release all wage and hour claims under the FLSA. *Id.*

###### D.  Allocation Formula

The remaining Settlement Amount of $555,000.00, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and a service payment, was allocated based on data from employee record systems provided by Defendants after preliminary approval of the Settlement, the accuracy of which is a material term of the Settlement. Ex. A, Settlement Agreement ¶ 42. Class counsel allocated the settlement funds among the members of each Subclass on a pro rata basis based on pre-established formulas approved by the Court. *Id.* ¶ 39; ECF No. 153. Because they consented to join the case and assert their FLSA claims prior to settlement, all Opt-In Plaintiffs, as well as Unpaid Overtime Subclass Members whose visit data reflect they performed an average of 25 or more visits per week, were allocated enhanced settlement payments calculated by adding an additional 50% of their proportionate share, provided that no enhancement exceeded a cap of $5,000 per person. Ex. A, Settlement Agreement ¶ 40. The allocation method results in an average settlement distribution of approximately $2,831.63 per member of the Settlement Class, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment. Ex. D, Becvar Decl. ¶ 12.

###### E.  Service Payment, Attorneys' Fees, and Settlement Administration Expenses

Contemporaneous with this Motion Plaintiffs will apply for Court approval, and Defendants will not oppose, distribution of a Service Payment to the Class Representative, paid

out of the Settlement Amount that does not exceed $15,000.00, as payment for her efforts on behalf of the class, including assisting Class Counsel with the prosecution of the Lawsuit. Ex. A, Settlement Agreement ¶ 55. In addition, Class Counsel will petition the Court, unopposed, for approval of an award of attorneys' fees and costs. Class Counsel will seek, and Defendants will not oppose, an award of attorneys' fees and costs of 38% of the Settlement Amount, or $370,000.00, in addition to $25,000.00 for reimbursement of reasonable litigation costs expended. *Id.* Class Counsel will also seek $10,000.00 as reimbursement for settlement administration expenses. *Id.*; Ex. C, Admin. Decl. ¶ 19. Class Counsel submits, and Defendants do not dispute, that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### F.    Settlement Administration

On January 24, 2023, the Settlement Administrator mailed the Settlement Notice via U.S. First Class mail to 196 Class Members and via email to 148 Class Members for whom an email address was provided. Ex. C, Admin. Decl. ¶¶ 7-8. Nine notices were returned by the U.S. Postal Service, with three new addresses provided. *Id.* ¶ 9. For the remaining six Settlement Notices, the Settlement Administrator performed a skip trace to locate a better address. *Id.* As a result of the skip-trace effort or re-mail request from Counsel or the class members themselves, a total of eight Settlement Notices were re-mailed and one Settlement Notice was deemed undeliverable, as no better address was provided from the Post Office or obtained through skip trace. *Id.* ¶ 10.

### G.    Objections and Opt-Outs

The deadline to object to or opt out of the settlement was March 10, 2023. Ex. C, Admin. Decl. ¶ 8. This deadline has now passed. As of the date of the Settlement Administrator declaration,

no Class Member requested exclusion from the settlement, and no Class Member objected to the settlement. *Id.* ¶¶ 11-12.

## III.    THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id*. Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. As set forth in Section II.F above, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B).

## IV.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial

policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider four factors: (1) the adequacy of representation by class representatives and class counsel; (2) whether the settlement was negotiated fairly; (3) the adequacy of the relief provided to the class; and (4) whether class members were treated equitably relative to each other. Fed. R. Civ. P. 23 (e)(2); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

Additionally, courts have construed the FLSA as requiring approval of a settlement that would release FLSA claims. When a court evaluates an FLSA settlement, its review "requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a

fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789 at *9 n.9 (citations omitted). All of these factors weigh in favor of final approval.

**A.    The Class Is Adequately Represented by the Class Representative and Class Counsel (First Factor).**

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1975); *see also Isby*, 75 F.3d at 1200. Class Counsel are competent and experienced in class actions, particularly wage and hour class actions of exactly this kind, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Ex. D, Becvar Decl. ¶¶ 4-5, 14; *see also, e.g.*, *Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015). Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs, and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. Ex. D, Becvar Decl. ¶ 14.

As the Court found when it concluded the Named Plaintiff was adequate to serve as class representative (*see* ECF No. 128 at 13), the class representative has demonstrated she qualifies as a conscientious representative plaintiff through her commitment to vigorously prosecuting the

litigation. *Snyder*, 2019 WL 2103379 at *4; *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 31-32 (E.D.N.Y. 2019). Further, she has no interests that are antagonistic to the interests of the Settlement Class. (ECF No. 128 at 13.) This factor therefore weighs in favor of final approval.

B. **The Settlement Was Negotiated Fairly (Second Factor).**

There is no indication that the proposed settlement is the result of collusion. *See Isby*, 75 F.3d at 1200. The settlement was reached after intense negotiation with the dedicated assistance of a well-respected private mediator, Hon. Morton Denlow (Ret.). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, expert analysis, and over three years of active litigation. Therefore, this Court should find that this factor supports final approval of the settlement.

C. **The Settlement Amount Adequately Provides Relief to the Class (Third Factor).**

Courts have held that the six factors identified in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014), subsume the considerations of the third factor under Rule 23(e)(2). *Snyder*, 2019 WL 2103379 at *5. Those factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed. *Wong*, 773 F.3d at 863.

**1.    The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks.**

The Settlement Amount, as reflected in the attached Settlement Agreement, represents significant value for the 196 combined collective action and class action members—an average sum of $2,831.63 per Clinician, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment—particularly given the attendant risks of litigating the merits of the case through summary judgment proceedings and/or trial, and any appeals of decisions on those matters.

In evaluating the strength of a plaintiff's case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendants' defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendants' pay scheme, which uniformly compensated Clinicians on a combined "per visit" and hourly basis, failed to meet the salary or fee basis tests

under the FLSA. Few courts have addressed this precise issue, and the ones that have are non-precedential in this district. *See Hicks v. Great Lakes Home Health Servs.*, No. 17-CV-12674, 2018 WL 2363959, at *4 (E.D. Mich. May 24, 2018) (granting partial summary judgment for home care clinician on the grounds that a hybrid fee and hourly basis pay-plan does not satisfy the requirements for exemption under the FLSA); *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 838-39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task).

With regard to Plaintiffs' claims for unreimbursed business expenses under the IWPCA, Plaintiffs would have to overcome Defendants' defense that their expense reimbursement policy fully complied with the IWPCA and therefore Plaintiffs were barred from seeking expense reimbursement after 30 days. *See* 820 ILCS 115/9.5(a).

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether Plaintiffs could credibly establish the hours of overtime they worked and the weeks in which they worked overtime. Further, Plaintiffs would have to overcome arguments that the fluctuating workweek method of calculating overtime premiums (FWW), which results an overtime multiplier of .5 times (as opposed to 1.5 times) the regular hourly rate, should apply. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08 Civ. 5802, 2011 WL 248448, at *3 (N.D. Ill. Jan. 26, 2011) (holding that the FWW method of calculating overtime premiums

for salaried employees using a half-time rate applied to the plaintiffs' misclassification claims). Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In light of these risks, the settlement provides far more than "a fraction of the potential recovery." Depending on whether the FWW method of calculating overtime is applied, which remains a disputed and undecided question, Class Counsel estimate that the maximum potential claims for overtime wages for the IMWL Unpaid Overtime Subclass is approximately $60.50 per workweek using the .5 multiplier (or $181.50 per workweek using a 1.5 multiplier), exclusive of liquidated damages, statutory interest, and other penalties. Ex. D, Becvar Decl. ¶ 13. Thus, the average settlement amount of $27.25 per workweek distributed directly to the IMWL Unpaid Overtime Subclass represents as much as 45% of their likely maximum potential claim for overtime wages, excluding statutory interest. *See* ECF No. 151. The settlement also provides for and 50% of the maximum potential claim for the IWPCA Vehicle Use Subclass and 100% of the maximum potential claim for the IWPCA Cell Phone Use Subclass, also excluding interest. *Id.* This is well within the range of reasonable recovery for the class and represents significant value given the attendant risks of litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long.

By reaching a favorable settlement prior to dispositive motions and trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part

of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believe Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Donovan*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Here, further litigation would imminently result in significant summary judgment practice on liability and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. The proposed settlement, on the other hand, provides immediate benefits. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

### 3. There Has Been No Opposition to the Settlement, and Competent Counsel for All Parties Endorse the Agreement.

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). Here, no class members objected to or requested exclusion from the settlement. Ex. C, Admin Decl. ¶¶ 11-12.

15

In addition, the Class Representative supports the settlement, as do Class Counsel, as set forth above, and Defendants and their counsel. Thus, this factor also favors approval of the settlement.

### 4. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

This complex hybrid class and collective action was resolved more than three years after it was initiated. This period involved extensive discovery, including research, analysis, investigation, and the exchange of thousands of pages of written discovery and voluminous production of ESI in the form over 190,000 lines of data from the Homecare Homebase electronic medical record system, consultation with experts, and class and conditional certification practice, among other things. *See* Ex. D, Becvar Decl. ¶ 6; Ex. A, Settlement Agreement ¶ 3. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement—indeed, dispositive motion practice and trial preparation were the immediate tasks at hand. Ex. D, Becvar Decl. ¶ 14. Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this factor favors final approval of the settlement.

### D. Class Members Were Treated Equitably Relative To Each Other (Fourth Factor).

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have

relatively stronger legal claims. *See Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation method, the Parties considered, among other things, the individual number of weeks the members of each Subclass worked during each class period, their full-time or part-time status, their most recent "per visit" pay rate, and the data produced from Homecare Homebase. Ex. D, Becvar Decl. ¶ 11. To determine an equitable distribution among class members with claims of differing strengths, the allocation formula provides enhanced settlement payments of additional 50% of their proportionate share to the Opt-In Plaintiffs, who consented to join the case, participate in discovery, and assert their FLSA claims prior to settlement, and IMWL Unpaid Overtime Subclass Members whose visit data reflect they performed an average of 25 or more visits per week. Ex. A, Settlement Agreement ¶ 40.

The proposed settlement thus ensures that the Class Members who wish to participate in the settlement will receive significant monetary relief. *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47 (finding *pro rata* distribution scheme sufficiently equitable). Further, the Agreement provided for an effective opt-out mechanism for class members to retain their federal and state wage and hour claims if they sought the opportunity to pursue an individual claim. *Id.* Accordingly, the factors all weigh in favor of final approval of the settlement and thus the settlement is fair, reasonable, and adequate. *See Isby*, 75 F.3d at 1198, 1200.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant their Joint Motion for Final Approval of Class and Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached as Exhibit B.

Dated: March 16, 2023

Respectfully Submitted,

*/s/ Teresa M. Becvar*

James B. Zouras
Teresa M. Becvar
**STEPHAN ZOURAS, LLP**
222 West Adams Street, Suite 2020
Chicago, IL 60606
Tel: (312) 233-1550
jzouras@stephanzouras.com
tbecvar@stephanzouras.com

**CLASS COUNSEL**

*/s/ Jeffrey S. Fowler*

Jeffrey S. Fowler
David A. Moore
**LANER MUCHIN, LTD.**
515 N. State Street, Suite 2800
Chicago, IL 60654
Tel: (312) 467-9800
jfowler@lanermuchin.com
dmoore@lanermuchin.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on March 16, 2023, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

_/s/ Teresa M. Becvar_